## AFFIDAVIT IN SUPPORT OF
## A CRIMINAL COMPLAINT

I, Kassandra L. McKenzie, a Special Agent with the Federal Bureau of Investigation, being duly sworn, depose and state as follows:

## INTRODUCTION

1.     I have been employed as a Special Agent of the Federal Bureau of Investigation ("FBI") since 2015, and I am currently assigned to FBI Louisville, London Resident Agency. While employed by FBI, I have investigated federal criminal violations related to violent crimes, child exploitation, and child pornography.  I have gained experience through training with the Behavioral Analysis Unit, the FBI Academy in Quantico, VA, other state and local law enforcement trainings and everyday work relating to conducting these types of investigations.  I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256(8) and used interchangeably with the term "child sexual abuse material" or "CSAM") in all forms of media including computer media.  I have used evidence collected from digital devices in many investigations and am familiar with the evidence potential contained within such devices.  Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, and 2252A, and I am authorized by law to request a search warrant.

2.      This Affidavit is submitted in support of a Criminal Complaint for Damien Tylor Scearse for violations of 18 U.S.C. § 2251, production of a child pornography.

3.      The statements contained in this affidavit are based on, among other things, my own investigation; information provided by U.S. federal law enforcement agents; written reports about this and other investigations that I have received, directly or indirectly, from other law

enforcement agents; information gathered from the service of administrative subpoenas; the results of physical and electronic surveillance conducted by law enforcement agents; independent investigation and analysis by law enforcement agents/analysts and computer forensic professionals; and my experience, training and background as a Special Agent. Since this Affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe a violation of 18 U.S.C. § 2251 has occurred.

## DEFINITIONS

4.      The following definitions may apply to this Affidavit:

a.      "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

b.      "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph (in whatever form, e.g., digital and printed photographs), film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct or the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

c.      "Child sexual abuse material" or "CSAM," as used herein, has the same meaning as the term "child pornography," defined above.

d.      "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices.  *See* 18 U.S.C. § 1030(e)(1).

e.      A provider of "Electronic Communication Service", as defined in 18 U.S.C. § 2510(15), is any service that provides to users thereof the ability to send or receive wire or electronic communications.  For example, "telephone companies and electronic mail companies" generally act as providers of electronic communication services.  See S. Rep. No. 99-541 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3568.

f.      The "Internet" is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.  The internet is a means or facility of interstate or foreign commerce.

g.      "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

h.      "Mobile applications," as used herein, are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game.

3

i.        "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

j.        "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

k.        "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

l.        A "lockscreen" of a phone is the display screen of a cellular phone when it is locked and not in use. The display can show a photo or a number of settings such as a clock.

**PROBABLE CAUSE**

5.        The FBI received an online tip regarding Damien Tylor SCEARSE (hereinafter "SCEARSE") in early 2026. The tip detailed information surrounding SCEARSE's online sexual exploitations of a minor, MV1. Specifically, the complainant who made the online tip saw an image of a young girl kissing SCEARSE on the lock screen of SCEARSE's phone. The complainant then observed SCEARSE's public online social media profiles on Xbox, Roblox, and TikTok and noted that he last played Roblox on Xbox with a user whose profile photo matched

4

the description of the girl SCEARSE was kissing in his lock screen photo. SCEARSE's TikTok account had one follower who also matched the Xbox and Roblox photo and the photo on SCEARSE's lock screen. Each of these usernames contained variations of MV1's true name and led to her identification by myself using open source searching and law enforcement methods.

6.    I interviewed MV1's parents regarding her potential contact with SCEARSE. MV1 and her parents lived in Harlan County, Kentucky at the time of the interview and the time of MV1's contact with SCEARSE. Harlan County, Kentucky is located within the Eastern District of Kentucky. MV1's parents discovered MV1's contact with SCEARSE in or about March 2026. MV1's mother observed conversations between SCEARSE and MV1 using the Snapchat application on MV1's phone. The conversations were sexually explicit in nature and contained images of Child Sexual Abuse Material (CSAM) of MV1.

7.    I reviewed the content from MV1's Snapchat account and observed the following:

a.  Three images which were saved in the Snapchat chat between SCEARSE and MV1. The images were sent from MV1's account to SCEARSE's account. Each image displayed a girl matching the description of MV1. In the first image, MV1 pulled the top of her pajamas up to display her breasts. In the second image, MV1 faced away from the camera and pulled her pajama shorts down to expose her buttocks. In the third image, MV1 took a photo displaying her exposed vagina.

b.  Two photos sent from SCEARSE's account on 3/18/2026. One photo is of MV1 and SCEARSE at what appears to be a Wal-Mart, the other is a photo of SCEARSE and MV1 at what appears to be a Wal-mart, and the pair can be seen kissing.

c.  A photo of SCEARSE eating a cheeseburger sent on 3/19/2026 with text over the photo which reads "Good girl, now put the timer on, put the phone on the floor and stand over top of it with

ya moomoo on", [sic] or words to that effect.

d.  A photo sent by SCEARSE on 3/21/2026 with a text over the photo that reads "when you bath you better send me pics and send me them even when we aren't talking and keep me updated please", [sic] or words to that effect.

e.  A video sent 2/18/2026 from SCEARSE. In the video, SCEARSE is brandishing a black handgun, believed to be a Glock pistol. Scearse says in the video that if anyone tries to flirt with MV1 that SCEARSE, the guy, and "Mr. Glock" are going to have a bad day, or words to that effect. SCEARSE points the gun at the camera in this video.

f.  A photo of SCEARSE sent on 3/26/2026 from SCEARSE's account. The photo has text over it which reads, in part "… and I wanna see that fine ass sometime today, literally like a picture in your mirror", or words to that effect.

8.      On June 10, 2026, a Child Abuse Forensic Interview (CAFI) was conducted of MV1. During the CAFI, MV1 disclosed that she met SCEARSE through Snapchat on 12/1/2025 when she was 14 years old. SCEARSE knew her age because she told him how old she was when she turned 15 years old shortly after they met. MV1 confirmed that SCEARSE knew she was in high school. MV1 stated that SCEARSE planned in-person meetings with MV1 at Wal-Mart in Harlan, Kentucky. MV1 stated that MV1's mother drove her there and would wait in the parking lot. MV1's mother did not know about SCEARSE or that MV1 was meeting with SCEARSE at the time. SCEARSE and MV1 hung out in the garden section of Wal-Mart because it was less trafficked by customers. SCEARSE kissed MV1 and took the photos described in paragraph 7b using his phone. SCEARSE sexually assaulted MV1 at Wal-Mart, placing his hands down MV1's pants and placing her hand on his penis inside his pants.

9.      MV1 stated that SCEARSE began asking for CSAM images of MV1 in or about

January 2026 and once he started requesting those images he asked for them every day. MV1 described that SCEARSE got mad if MV1 did not send him CSAM images and told her he would break up with her or harm himself if she did not. According to MV1, SCEARSE had MV1's Snapchat account password and monitored who she communicated with and where she went. MV1 confirmed that she took the photos described above in paragraph 7a at the direction of SCEARSE sometime in or about March 2026. MV1 advised that she used her Apple iPhone to take the photos in question and the Snapchat application to send them to SCEARSE. MV1 identified SCEARSE's Snapchat account and her own.

10.     I know from my training and experience that Apple iPhones are not manufactured in the United States, and thus contain parts that would have been shipped in interstate or foreign commerce. I also know that Snapchat is an application that utilizes the internet to send photos and videos between users, it is a means or facility of interstate commerce.

## CONCLUSION

11.     Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated by Damien Tylor Scearse.

Respectfully submitted,

/s/ Kassandra McKenzie w.p.b. Hanly A. Ingram, USMJ
_____
Kassandra L. McKenzie
Special Agent
Federal Bureau of Investigation

Subscribed remotely per Rule 4.1(b)(2)(A) this 11th day of June, 2026.

_____
Hanly A. Ingram
UNITED STATES MAGISTRATE JUDGE

7